## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HOLY CROSS COLLEGE INC .d/b/a HOLY CROSS SCHOOL** | **CASE NO.** _____ |
| **Plaintiff** | **DIVISION:** _____ |
| **vs.** | **SECTION:** _____ |
| **FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA) and DEANNE CRISWELL, in her capacity as Administrator of FEMA** | **DISTRICT JUDGE:** _____ |
| | **MAGISTRATE:** _____ |

_____

## COMPLAINT FOR ADMINISTRATIVE REVIEW AND DECLARATORY JUDGMENT

Plaintiff, **HOLY CROSS SCHOOL,** ("Holy Cross") sues Defendants, **FEDERAL EMERGENCY MANAGEMENT AGENCY** ("FEMA") and **DEANNE CRISWELL**, Administrator of the Federal Emergency Management Agency (collectively "FEMA"), and states:

1.      This is a complaint for administrative review pursuant to the Administrative Procedure Act, 5 U.S.C. § 501, et seq. and action for declaratory relief brought by Holy Cross School (hereinafter "Holy Cross") for FEMA's abuse of discretion.  Holy Cross seeks relief from the de-obligation of funds granted to Holy Cross through the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121, *et seq.* ("Stafford Act"), in connection with the re-location and reconstruction of their academic institution damaged by Hurricane Katrina in 2005.

2.      Holy Cross has timely appealed. FEMA, has, on one occasion granted an appeal where they in part reduced the de-obligation from $7,998,081.00 to $4,829,095.90 finding that $3,158,985.10.

Subsequently, a second appeal of the remaining $4,829,095.90 de-obligated funds was appealed and was denied. FEMA has improperly concluded that Holy Cross did not comply with the Stafford Act.

3.     Holy Cross seeks an order declaring FEMA's actions of de-obligating funding provided to Holy Cross for disaster relief as arbitrary and capricious, an abuse of discretion, and contrary to law; without observance of procedure as required by law; and unwarranted by the facts.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, which provides for original jurisdiction in suits involving questions arising under federal law.

5.     Judicial review is authorized by the Administrative Procedure Act, 5 U.S.C. § 701, et seq., which provides that any person suffering a legal wrong because of an agency action, or adversely affected or aggrieved by such action, shall be entitled to judicial review thereof. 5 U.S.C. § 702. The Administrative Procedure Act further provides that a final agency action for which there is no adequate remedy in a court is subject to judicial review. 5 U.S.C. § 704.

6.     The July 7, 2021 decision by FEMA, acting in its official capacity, transmitted to Holy Cross by the Governor's Office of Homeland Security and Emergency Preparedness (GOHSEP) by cover letter dated August 4, 2021 (the "Final Administrative Decision" ) (attached hereto as Exhibit A – in globo), and upholding FEMA's position with respect to de-obligation of emergency funds provided to Holy Cross, constituted a final decision pursuant to 44 CFR 206.206(b)(2) and a "final agency action" within the meaning of 5 U.S.C. § 704.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Holy Cross' claims occurred in this judicial district and because Holy Cross resides in this judicial district within the meaning of the statute.

8.      Further, by affirmatively appearing before this Court to seek relief against an agency of the United States, Holy Cross is not consenting to jurisdiction over any issue otherwise barred by the Eleventh Amendment and reserves all Constitutional protections that Amendment provides.

## PARTIES

9.      Plaintiff, **HOLY CROSS** is a private non-profit entity created pursuant to the laws of Louisiana, and is domiciled in Orleans Parish, for the State of Louisiana.

10.     Defendant, **FEMA** was created in 1979 as the result of a merger of several pre-existing federal agencies that handled disaster related responsibilities.  FEMA is the federal agency designated to administer the provisions of the Stafford Act.

11.     Defendant, **DEANE CRISWELL** is the administrator of FEMA.   In that capacity, Administrator Criswell is responsible for the overall administration of FEMA.  Administrator Criswell is sued in her official capacity.

## FACTUAL BACKGROUND

12.     During the incident period of August 29, 2005, to November 1, 2005, high winds and severe flooding from Hurricane Katrina produced damage in all Louisiana parishes. On August 29, 2005, President George W. Bush declared that a major disaster existed[1] and initiated the federal government's involvement in the hurricane recovery effort pursuant to the Stafford Act.  (See Exhibit B).

---

[1] FEMA-1603-DR-LA

13.     The Stafford Act generally provides assistance essential to meeting immediate threats to life and property resulting from a major disaster, as well as for hazard mitigation measures that substantially reduce the risk of future damage. 42 U.S.C. §§5170(b) and 5170(c).

14.     After a disaster declaration by the President, an agreement is executed between FEMA and the affected State, which is called the FEMA-State Agreement.   44 C.F.R.   § 206.44(a).   "This Agreement imposes binding obligations on FEMA, States, their local governments, and private nonprofit organizations within the States in the form of conditions for assistance which are legally enforceable." *Id.*

15.     As a result of the flooding and wind driven rain, Holy Cross sustained grave damage to its entire campus.  As a private nonprofit, Holy Cross made proper applications for Public Assistance with FEMA through the Governor's Office of Homeland Security and Preparedness (GOHSEP). Holy Cross School was determined to be eligible for Public Assistance (PA) funding.

16.     FEMA prepared PW 12965 for the High School, PW 13237 for the Middle School, PW 13333 for the Administration Building, and PW 13136 for the Central Services Plant. All four Facilities were determined to be eligible for replacement.

17.     Holy Cross elected to relocate the entire campus, including these buildings, to a new location and further chose not to reconstruct several of its existing facilities, instead consolidating them into a new student services facility. [2]

18.     In letters to the Louisiana Governor's Office of Homeland Security and Emergency Preparedness (GOHSEP) dated June 6, 2008, and June 10, 2009, FEMA approved the change of location requests for these Facilities. FEMA's letters acknowledged that the facilities were eligible for

---

[2] PW 12753 consolidated several existing Facilities and Functions into one project to include PWs 10410, 15655 and 17127.

replacement and the change of location did not alter their pre-disaster design, function or capacity, other than potential increases for applicable codes and standards; and, therefore, the facilities would not be considered improved projects FEMA. (See Exhibit C)

19.     Following the assessments of these projects, which FEMA approved, FEMA "obligated" funds and transferred them into a bank account maintained by GOHSEP as the Grantee of the FEMA obligated funds to be distributed to Holy Cross as the Subgrantee.

20.     As Holy Cross completed the repairs, it submitted invoices to GOHSEP after verification that the work had been properly and successfully completed.

21.     FEMA, GOHSEP, and Holy Cross followed this process hundreds of times until the education institution was re-built.  FEMA ultimately "obligated" a total of $78,267,218 million in disaster aid related to the Holy Cross campus damages caused by Hurricane Katrina.

22.     Holy Cross completed the construction of the new campus in 2011, ten (10) years ago.  Since the completion of the initial four (4) buildings, Holy Cross has continued to add to their campus through private funding, bonds, insurance proceeds, and tax credits.  FEMA funds were not used for anything beyond the approved four (4) buildings.

23.     In October 2012, an audit (*hereinafter referred to as* "initial audit") was performed by the Office of the Inspector General to determine if Holy Cross obtained and maintained the insurance requirement under the Stafford Act while completing their publicly funded projects.

24.     At the time of the initial audit, the school had a pending request with the Louisiana Insurance Commissioner, relieving the school of the impossible task of obtaining $80million in flood insurance. The letter approving the waiver was received prior to the publication of the audit report and provided to the auditor.

25.    Holy Cross provided a response to the initial audit accompanied by the waiver and FEMA determined not to de-obligate $53 million.

26.    Four (4) years later, following FEMA's formal determination to de-obligate those funds, on April 14, 2015, years after Holy Cross had completed the PA funded projects as well as the additional self-funded buildings to the campus, the Department of Homeland Security Office of Inspector General (OIG) initiated another audit (*the* "second audit"). [5]  (Exhibit D)

27.    Following the second audit, the OIG issued a report setting forth concerns relative to the procurement practices of Holy Cross, including those PWs at issue in this proceeding.

28.    The OIG recommended FEMA disallow a total of $82.4 million, unless FEMA granted an exception for all, or part of the costs as provided for in 2 C.F.R. § 215.4.

29.    Following the recommendation of the OIG, FEMA conducted its own audit and made a finding that Holy Cross failed to follow CFR 2 Part 215 in procuring the contractors hired to help the school recovery and that the contracts failed to include provisions such as "The Clean Water Act" in its contracts and failing to include disadvantaged and small businesses despite the fact that one of the prime contractors was a Hudson Certified Woman owned company. [6]  (See Exhibit E)

30.    FEMA further "determined that the vast majority of the work completed totaling $74,618,721 involved contracts that were procured 'in a manner to provide, to the maximum extent practical, open and free competition.'" Therefore, FEMA sought to de-obligate $7,998,081.00 based upon this finding and not the proposed $82.4 million by the OIG. (See Exhibit F)

---

[5] Department of Homeland Security Office of Inspector General (OIG), 15-65-D, (April 14, 2015). – Ex. C
[6] At the time, these findings were very common in OIG audits and were addressed simply by establishing that the grant funds were used to accomplish the goal of the grant and that all cost were reasonable

31.     In response to the determination that FEMA would de-obligate $7,998,081.00, Holy Cross provided a detailed response which included a detailed cost analysis prepared using the actual bid numbers for all of the contractors and sub-contractors to determine reasonable cost. (See Exhibit G)

32.     In support of Holy Cross' response, the State of Louisiana, through GOHSEP, performed its own cost analysis finding that the costs used by Holy Cross were in fact reasonable.  The State urged FEMA to move forward **without de-obligating any funds as it had done in all previous audits with similar findings**. (See Exhibit H)

33.     In addition to the written communications between FEMA, Holy Cross, and GOHSEP, there were numerous meetings with all parties present to discuss the findings and to address the cost reasonableness of the expenditures.  FEMA was provided with all of the documentation used to develop the cost analysis. (See Exhibit I.)

34.     Following the communications and meetings, FEMA prepared and obligated new versions of project worksheets in July 2017. Those new versions of project worksheets refined the eligible cost estimate based on FEMA's review of the documentation provided in support of the completed work. After obligating those new versions of project worksheets prepared in response to the audit, FEMA began requesting that Holy Cross provide supplemental information to support the previously disallowed costs prior to FEMA closing the projects.[7]

35.     In May 2019, after a review of the supporting documentation supplied by Holy Cross, and in response to a request from GOHSEP to close the projects, FEMA prepared final versions and closed each project. (Exhibit J)

---

[7] Letters from Director, LRO, to Director, Grantee (May 2, 2018, and June 1, 2018). See *7532-O DEC5 Holy Cross College OIG-15-65-D PWs Final.pdf* and *7532-O DEC6 Holy Cross OIG 15-65-D 2nd Meet Req final.pdf* contained in FEMA's EMMIE system.

36.     For each of the projects, FEMA erroneously concluded that Holy Cross had not provided the necessary documentation to separate the ineligible work/costs from the eligible work/costs, although it was clear that the cost to re-build the campus actually far exceeded the obligated funds of FEMA. The additional funds necessary to complete the work were generated separately by Holy Cross through fundraising, insurance proceeds, bonds, and tax credits. Again, it was clear that procurement was not at issue in the FEMA determinations; this was merely an exercise of cost reasonableness.

37.     For Project Worksheets 12965 and 13237 (Middle and High School Facilities) FEMA determined that Holy Cross exceeded the pre-disaster design of the Facilities when it installed decorative railings, columns, ceiling murals and floor logos. The result of FEMA's calculation was a net reduction of $15,404.50 to the claimed amount for the hard construction costs in each PW.

38.     For PW 13333 (Administration Building) FEMA determined that Holy Cross exceeded the pre-disaster design, function and capacity of the Facility when it installed a cupola, additional tower levels, library finishes, additional dormers, a performing arts center, senior stairs and additional arched second floor doors. The result of FEMA's calculation was a net reduction of $663,863.43 to the claimed amount for the hard construction costs. A breakdown of specific work/costs FEMA determined ineligible is as follows:

| SOW | Cost Reduction |
|---|---|
| Cupola | $35,453.22 |
| Tower | $145,430 |
| Library Finishes | $64,459.50 |
| Dormers | $24,604.71 |
| Performing Arts Center | $248,366 |
| Senior Stairs | $118,140 |
| Arched 2nd Floor Doors | $27,410 |

39.     For PW 13136 (Central Services Plant) FEMA determined that Holy Cross exceeded the pre-disaster design and capacity of the Facility when it constructed a larger facility with greater mechanical, electrical and plumbing systems capacities.  FEMA's determination was that the eligible square footage (sf) of the new Facility was 8,097 sf, however Holy Cross elected to construct a 12,938 sf Facility. FEMA then apportioned the actual costs of installing the mechanical, electrical, and plumbing systems at the Facility based on the eligibility of the square foot area being served.  The result of FEMA's calculation was a net reduction of $4,712,060.95 to the claimed amount for the hard construction costs. A breakdown of specific work/costs FEMA determined eligible and ineligible is as follows:

| SOW | CLAIMED COST | ELIGIBLE COST | COST REDUCTION |
|---|---|---|---|
| Building Shell | $4,111,507.00 | $909,340.27 | $3,202,166.71 |
| Mechanical | $1,266,807.00 | $481,386.66 | $785, 420.24 |
| Electrical | $1,065,402.80 | $340,928.90 | $724,7473.90 |

40.     All four (4) projects were obligated and closed on May 30, 2019.  The notification of project closure was sent, via email, to Holy Cross and GOHSEP on June 4, 2019. (Exhibit K.)

41.     Holy Cross, as the sub-grantee, submitted its first appeal through GOHSEP, the Grantee, in a letter dated July 26, 2019.  (Exhibit L)  Holy Cross then submitted a supplemental memorandum in support of the first appeal following a meeting with FEMA officials in Washington D.C. on September 24, 2019. (Exhibit M)  In its first appeal, Holy Cross disputed FEMA's method of determining reasonable cost for those items deemed improvements. The Grantee, GOHSEP, concurred with Holy Cross in a letter dated September 23, 2019.(Exhibit N.)  At no point was a procurement issue addressed.  The only issue on appeal was the eligible cost and determination of reasonable cost.

42.     On December 9, 2020, the FEMA Region VI Regional Administrator (RA) partially granted

the appeal. (Exhibit O) Notwithstanding its prior position that procurement was no longer at issue,

just a cost reasonable analysis, FEMA granted the First Appeal and Supplemental Appeal in part

asserting that they used their discretion to disallow any costs it finds to be unreasonable. As such,

FEMA found that Holy Cross adequately demonstrated that it incurred an additional $3,158,985.10

in reasonable costs thereby creating $4,829,095.90 in funds to be de-obligated.  At no point in time

did FEMA's decision in the first appeal address the merits of the issues presented by Holy Cross.

43.     Pursuant to 44 CFR § 206.206, Holy Cross filed and transmitted a second appeal on February

9, 2021.(Exhibit P) Holy Cross maintained its position that the $4,829,095.90 remaining at issue were

in fact all contracts properly procured or exempt from procurement requirements, and that all costs

were reasonable.

44.     GOHSEP, as the Grantee, transmitted the second appeal on April 8, 2021, providing

additional analysis supporting Holy Cross' position. (Exhibit Q)

45.     On July 7, 2021, FEMA transmitted a denial of the second appeal to GOHSEP. (Exhibit R)

46.     GOHSEP transmitted the FEMA findings to Holy Cross on August 4, 2021. (Exhibit S)

47.     FEMA withdrew funds from the GOHSEP account which contained the previously obligated

authorized funds for all of the Holy Cross projects.  Consequently, Holy Cross has used those funds

for their intended purpose of re-building the school and GOHSEP is now in a position of seeking

repayment from this completed project. (Exhibit T)

## COUNT 1
Agency Action Contrary to Law:
5 U.S.C. §706(2)(A)

**I.      FEMA has not acted in accordance with the law by addressing issues that were not under administrative review regarding procurement.**

48.     Holy Cross incorporates by reference the allegations set forth in paragraphs 1 through 47.

49.     Pursuant to 5 U.S.C. §706(2)(A), the court reviews the action of an administrative agency to determine if it is (1) arbitrary and capricious; (2) an abuse of discretion; or (3) otherwise not in accordance with the law.

50.     The decision by FEMA to de-obligate the prior payments to Holy Cross and require reimbursement of those sums is arbitrary, not in accordance with the law, and in excess of statutory authority under the Stafford Act.

51.     FEMA approved the projects at issue in this matter, obligated funds for the projects, and then FEMA reviewed its own decisions.  FEMA abused its discretion by de-obligating funds which they approved and then were distributed in accordance with the law.

52.     FEMA further abused its discretion by making a finding that federal procurement procedures were not followed without citing a single procurement error.  These actions are arbitrary and capricious and not in accordance with the law.

**II.     FEMA has abused its discretion by intentionally ignoring and disregarding the independent funding sources that Holy Cross used for all work that FEMA has deemed an improvement.**

53.     Holy Cross incorporates by reference the allegations set forth in paragraphs 1 through 47.

54.     The PA funded projects were complete in 2011, ten years ago.  Since their completion, Holy Cross has continued to improve their campus with funds raised through private fundraising, bonds, and tax credits.

55.    Because FEMA has abused its discretion in taking a look back at what was completed ten years ago, their assessments of alleged improvements are erroneous because they are evaluating the campus as it exists in present day.

56.    FEMA continues to incorrectly view the current entire Student Activities Center as an equivalent to the "Central Services Building" that was funded by FEMA.  They continue to ignore that Holy Cross consolidated the prior gym, band hall, weight room, video room, and pool facility, into this Student Activities Center.  These facilities, which were consolidated, were all approved FEMA projects.  They further ignore that Holy Cross is a fully functioning school, which in addition to serving children since 2007, has also continued to improve all facilities at their own cost. (See Exhibit U).

57.    Holy Cross has provided documentation that clearly demonstrates that any alleged improvements to their campus were clearly paid for by Holy Cross, yet FEMA ignores this fact and continues to evaluate the campus at its present state rather than at the time it was built and evaluated in real time by FEMA and GOHSEP officials overseeing the project.

58.    FEMA's intentional disregard to the above facts coupled with the proof that that the total build of the Holy Cross campus was $108,086,186 million when FEMA only obligated $78,267,218 million demonstrates that their actions are arbitrary and capricious.

59.    FEMA has provided no reason whatsoever to Holy Cross why the $4,839,095.90 million of the projects that they have deemed "improvements" were not funded by the $29,818,968 million raised by Holy Cross through bonds, insurance proceeds, and new market tax credits.

**III.   FEMA has not acted in accordance with the law.   FEMA re-assessed the eligibility determination ten (10) years following the completion of a project after having approved the scope of work, eligibility and cost.**

60.   Holy Cross incorporates by reference the allegations set forth in paragraphs 1 through 47.

61.   FEMA has taken the unprecedented and wholly unauthorized step of reviewing prior FEMA and GOHSEP officials' eligibility determinations and re-opening and denying Holy Cross' eligibility *de novo* more than ten (10) years after a project completion.

62.   Current FEMA officials are now seeking to undo previous FEMA approvals made by FEMA officials who contemporaneously reviewed the applications of Holy Cross in "real time" and with "on the ground" access to the projects and all its details.

63.   FEMA has substituted the new post-construction design of the facilities in lieu of the licensed architect of record's design when making a cost analysis review and determining whether the projects were of the same like and kind of the prior structure or improvements.

64.   FEMA's decision to substitute their own design is not grounded in law, regulation, precedent, or reasonableness.

65.   FEMA has not acted in accordance with the law and its actions, while unlawful, if permitted, will create a precedent that will lead to confusion, if not chaos, in future grant applications and audit resolutions.   The effect would be that no declaration of eligibility would ever truly be binding, nor any design be safe – a result not contemplated by Congress or set forth in the law.

**IV.   FEMA's actions are arbitrary and capricious.   On June 10, 2009, the acting director acknowledged that $5,548.330.06 was the total cost of the project for the Central Services building.   For FEMA to now assert that the reasonable cost for the entire project is only $909,340.27 is disingenuous.**

66.   Prior to the groundbreaking of the new campus, Holy Cross submitted conceptual designs to FEMA for approval. The designs showed that elements at the previous facility would be consolidated

at the new facility. Holy Cross submitted these designs to FEMA specifically requesting an "improved project" designation. (Exhibit V)

67.    On March 12, 2008, GOHSEP sent correspondence to FEMA Director James Stark indicating that it had conditionally approved Holy Cross as an improved project.

68.    On June 19, 2008, GOHSEP followed up on its conditional approval with correspondence that stated, "Based on the information provided by Holy Cross School, GOHSEP approves this request, and is notifying FEMA of this determination.  In this letter, GOHSEP cited 44 CFR § 206.203(d)(1), "[i]f a subgrantee desires to make improvements but will still restore the pre-disaster function of a damaged facility, the Grantee's approval must be obtained."

69.    The purpose of the Central Services Building is to distribute electrical power and HVAC throughout the campus, Administrative Building, Middle and High School, just like the original building on the old campus. It is noteworthy that the original campus used a water cooling and heating system, which cost considerably more than the system actually installed at the present campus.

70.    On July 28, 2008, FEMA acknowledged the GOHSEP correspondence and approved the rebuild of the gymnasium, to be a "new gymnasium facility" (hereinafter "student activities center") as an improved project.

71.    In this correspondence FEMA specifically recognized that the following would be consolidated into the student activities center: Bengal Band Hall, Gymnasium, Weight Room/Video Room, and Pool Facility. Due to the consolidation, it specifically allowed for an increase in square footage from 42,396 sq. ft. to 93,441 sq. ft. and capped the total cost of that project at $5,083,750.16. The correspondence from FEMA provides: "FEMA has conducted the necessary reviews for the Applicant's request, including site visits, program eligibility determinations, and an examination of historic and environmental concerns. The Record of Environmental Consideration (REC) is included

with this letter. **Based on these reviews, the Applicant's request for an improved Project is approved**." (See Exhibit W.)

72.     Considering receipt of the aforementioned correspondence, Holy Cross proceeded as if the consolidation of elements in the Student Activities Center were approved by both GOHSEP and FEMA. It was not until completion of the Central Services Building and the new consolidated student activities center along with the passing of almost ten (10) years that FEMA reversed course and voiced some concerns or issues with the previously proposed now completed consolidation plans.

73.     FEMA's eligibility determination in 2009 was the basis on which the Holy Cross campus was built.  Holy Cross shared in the cost of the CSB as set forth in the June 2009 approval letter and project work sheet version 5.

74.     Holy Cross anticipated paying for the 3,265 square feet of the space identified as ineligible and valued by FEMA at $706,889 ($216.51 per sq. ft.)

75.     In 2019, FEMA, without no explanation, de-obligated $3,202,166.73 for what they found to be a 4801 sq. ft. overbuild, even though they previously identified 3,265sq. ft as ineligible.  The drawings never changed, and FEMA provided no explanation for the declaration of an alleged additional square footage overbuild.

76.     Instead of calculating a de-obligation of $341,212.42 which is 1,536 more square feet of the previously approved ineligible space at $216.51 sq. ft., FEMA has de-obligated $3,202,166.71 for these 4,801 square feet of an alleged overbuild.

77.     Simple math can determine this egregious action of FEMA.  It is irrational to assert that 1/3 of the entire square footage of the central services building costs ¾ of the entire project.

78.     FEMA has provided no explanation for their math and refused to provide any explanation which undoubtedly rises to a level of arbitrary and capricious action.

V.     Holy Cross' action are consistent with the grant requirements of
       42 U.S.C. § 5205(c)

79.    Holy Cross incorporates by reference the allegations set forth in paragraphs 1 through 47.

80.    42 U.S.C. § 5205 provides, in pertinent part:

       (c)BINDING NATURE OF GRANT REQUIREMENTS
              A State or local government shall not be liable for reimbursement or any other penalty
              for any payment made under this chapter if—
              (1) the payment was authorized by an approved agreement specifying the costs;
              (2) the costs were reasonable; and
              (3)the purpose of the grant was accomplished.

81.    There is no dispute that the 3-way partnership of FEMA, GOHSEP, and Holy Cross made

the recovery possible.  Holy Cross, having never experienced a disaster of the magnitude of Hurricane

Katrina, relied heavily upon GOHSEP and FEMA for guidance throughout this project.

82.    When Holy Cross administrators returned to New Orleans, the effects of Hurricane Katrina

lingered in the form of debris removal, disaster, housing, instability in the electrical grid, and an overall

shortage of essential public services.  Amidst these exigent conditions, Holy Cross, in January 2006,

worked vigorously to reopen. In May 2007, Holy Cross began assembling its temporary campus in the

Gentilly area and was able to begin operating the school at the new location in August of 2007.

Construction of the permanent facilities in Gentilly started in 2008 while the exigent circumstances

from Hurricane Katrina remained prevalent. Holy Cross worked strategically to implement a

construction plan that would put its students in a permanent facility in the most expeditious way

possible. Working with FEMA officials in real time, Holy Cross completed construction of the Central

Services building first, then the high school. and middle school with the administration building being

completed by March 2010 and the Student Center by February 2011.

83.     All actions taken by Holy Cross were done with specific authorization from FEMA and GOHSEP.  Holy Cross did not take a single step in the construction of the new campus without direct input from GOHSEP and FEMA.

84.     All costs submitted by Holy Cross were reasonable as demonstrated throughout the entire application and administrative appeals process.

85.     Holy Cross obtained at least 3 bids for every contract, no matter how big or small, and all costs were reviewed for reasonableness by both FEMA and GOHSEP.

86.     It is undisputed that the purpose of the grant provided to Holy Cross was accomplished as they have built an academic institution enriching the education of students kindergarten through 12th grade.

### VI.     FEMA has not used a reasonable method of calculating ineligible costs.

### A.     RS Means is to be used early in the design phase of development.

87.     FEMA has used RS Means to calculate costs associated with the Holy Cross projects.

88.     The instructional book for the software used by FEMA recommends the use of RS Means during the early stages of project planning, but cautions that it should not be relied upon once full details of the design are available.

89.     The Civilian Board of Contract Appeals ("CBCA") recently addressed the reliability of RS Means cost estimates in a 2020 decision. In that decision, the CBCA acknowledged the usefulness of RS means to provide estimates, but clarified that:

> "Nevertheless, "[e]stimations…are still merely estimations," and at least one court (citing to a leading treatise, Standard Estimating Practice, from the American Society of Professional Estimators) has found that, even using RS means, "variations, even among several competitive [cost estimates for

the same construction work] can reach up to 30% with an average of a 17% difference."[21] "Estimates made with this method [using RS Means] can be expected to be accurate between -15% to +25% notwithstanding abnormal market conditions."[22]

90.     FEMA's  method of calculating reductions for alleged improvements to the central services building comma based solely upon its internal use of RS means, is insufficient to justify the amount of funding that has been de-obligated in this case.

**B.     FEMA's own calculations of cost reductions demonstrate the inaccuracy of RS Means.**

91.     In May of 2009, FEMA determined that Holy Cross' "actual replacement cost +3% contingency" for replacing the central services building totaled $5,744,716, and were reasonable.

92.     Holy Cross constructed the facility that FEMA knowingly funded, and Holy Cross has never requested any additional funding for construction cost related to that building. Yet, years after the project was completed, FEMA has reduced the project worksheet relative to the central services building to allow only $1,0731,656.12 in hard construction costs.[23]

93.     It appears that FEMA has examined this project in such detail, and with so much attention devoted to the minutiae it in determining how to calculate it, that FEMA appears to have lost sight of the basic conditions of eligibility. Holy Cross was eligible for PA funding[24], replacement rather than repair was warranted[25], and the original obligated cost were reasonable.[26]

---

[21] Chinese-Manufactured Drywall Products, 2017 WL 1421627, at 14 n.1; see Department of Defense, Unified Facilities Criteria Handbook: Construction Cost Estimating, UFC 3-740-05, 2-4.2 (Nov. 8, 2010)
[22] https://www.wbdg.org/ffc/dod/unified-facilties-criteria-ufc/ufc-3-740-05 (last visited April 8, 2020)
[23] PW 13136 V11, pg. 39.
[24] 44 C.F.R. 206.223(a).
[25] 44 C.F.R. 206.226(f).
[26] 44 C.F.R. 13.20(a)(5).

**COUNT 2**
FEMA's actions are outside the statute of limitations
42 U.S.C. § 5205(a)

94.    Holy Cross incorporates by reference the allegations set forth in paragraphs 1 through 47.

95.    42 U.S.C. § 5205 provides, in pertinent part:

> (a) STATUTE OF LIMITATIONS
> (1) IN GENERAL
> Notwithstanding section 3716(e) of title 31 and except as provided in paragraph (2), no administrative action to recover any payment made to a State or local government for disaster or emergency assistance under this chapter shall be initiated in any forum after the date that is 3 years after the date of transmission of the final expenditure report for project completion as certified by the grantee.
>
> (2) FRAUD EXCEPTION
> The limitation under paragraph (1) shall apply unless there is evidence of civil or criminal fraud.
>
> (c) BINDING NATURE OF GRANT REQUIREMENTS
> A State or local government shall not be liable for reimbursement or any other penalty for any payment made under this chapter if—
> (1) the payment was authorized by an approved agreement specifying the costs;
> (2) the costs were reasonable; and
> (3) the purpose of the grant was accomplished.

96.    Holy Cross completed the construction of the four (4) federally funded buildings of the new campus in 2011.

97.    It was not until July 2017 that FEMA made a determination that they would de-obligate $7,998,081.00, which was six years following the completion of the projects.

98.    It cannot be disputed that Holy Cross has complied with all requirements of the Stafford Act with approval from both GOHSEP and FEMA, through reasonable costs, accomplishing the purpose of the grant.

**PRAYER FOR RELIEF**

**WHEREFORE**, Holy Cross prays that this Honorable Court:

(1)  Enter an order setting aside FEMA's actions de-obligating $4,829,095.90 of funds granted to

Holy Cross by FEMA following Hurricane Katrina in 2005, on the grounds that FEMA's

actions are arbitrary and capricious, an abuse of discretion, and contrary to law; without

observance of procedure as required by law; and unwarranted by the facts.

(2)  Awarding Holy Cross such other relief as may be just, proper, and equitable.


Respectfully submitted,

**JASON ROGERS WILLIAMS & ASSOCIATES, LLC**

Jason Rogers Williams (LSBA 25539)
Nicole E. Burdett (LSBA 32972)
Hannah Beth Salter (LSBA 34749)
607 St. Charles Ave, Third Floor
New Orleans, LA  70130
Telephone: (504) 585-1413
Facsimile: (504) 581-5588

**R. J. ELLIS LAW FIRM**

/s/ Robert J. Ellis, Jr.
Robert J. Ellis, Jr. (LSB#26022)
650 Poydras Street, Suite 2615
New Orleans, LA 70130
Telephone: (504) 534-8399
Facsimile: (866) 596-2066
Bob@RJEllis.com

Attorneys for Holy Cross