```
UNITED STATES DISTRICT COURT        *
EASTERN DISTRICT OF LOUISIANA       *
                                    *
HOLY CROSS SCHOOL                   *
                                    *
        Plaintiff                   *   CASE NO. 2:21-CV-01658
                                    *   DIVISION:L(1)
                                    *
FEDERAL EMERGENCY                   *
MANAGEMENT AGENCY (FEMA) and        *
DEANNE CRISWELL, IN HER CAPACITY AS *
ADMINISTRATOR OF FEMA               *
                                    *
*************************************
```

## ORDER AND REASONS

Before the Court are Plaintiff Holy Cross College, Inc.'s ("Holy Cross") Motion for Summary Judgment and Defendants Federal Emergency Management Agency and Deanne Criswell, in Her Capacity as Administrator of FEMA's (collectively "FEMA") Cross-Motion for Summary Judgment. Having reviewed the parties' arguments, the applicable law, and the administrative record, the Court rules as follows.

I.  **BACKGROUND**

Holy Cross is a private, nonprofit, college-prep middle and high school for boys. AR4118.1. Hurricane Katrina destroyed its former campus in the Ninth Ward of New Orleans in August 2005. *Id.* Because of this extensive storm damage, Holy Cross was eligible for public-assistance grant funding from FEMA under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121–5207 (the "Stafford Act"). AR2119. Under the Stafford Act, the State or a state agency acts as the "grantee" for public-assistance grant funding. 44 C.F.R. § 206.201(m). Eligible subgrantees, which include state/local government and

agencies, Indian tribal governments, and private nonprofit organizations, then apply for assistance from FEMA under the grantee's grant. 44 C.F.R. §§ 206.201(a); (o). In this case, the State of Louisiana Governor's Office of Homeland Security and Emergency Preparedness (GOHSEP) was the grantee after Hurricane Katrina. AR4118.

FEMA determined that all four of Holy Cross's buildings were eligible for replacement. *Id.* Holy Cross relocated from the Ninth Ward to the Gentilly neighborhood of New Orleans and began campus construction there in 2008. AR4119. Holy Cross completed four permanent buildings – the middle-school and high-school buildings in August 2009, an administration building in March 2010, and the central services building (CSB)/student activity center (SAC) in February 2011. *Id.* Although the facilities are connected in a single facility, the SAC was a capped, improved project under Stafford Act regulations and policy, whereas the CSB was an uncapped, at-cost replacement project. AR1049, 2903, 2884-85, 2954, 6075.

In 2015, the Department of Homeland Security (DHS) Office of Inspector General (OIG), completed an audit of Holy Cross's receipt of $89.3 million in grant funding from FEMA under the Stafford Act. AR4116–41. The audit concluded that "Holy Cross did not follow Federal procurement standards in awarding 21 contracts totaling $82.4 million." AR4117. The OIG recommended that FEMA "disallow $82,360,247 as ineligible contract costs, unless FEMA grants an exemption for all or part of the costs as provided for in 2 C.F.R. Part 215.4."[1] AR4130. In accordance with that regulation and in response to the OIG audit findings, FEMA "performed a detailed analysis to determine if the claimed costs were reasonable and allowable for the level of effort required to perform the eligible work." AR6074. FEMA's audit found the disallowed

---

[1] Now 2 C.F.R. § 200.339.

amount reduced from the OIG's $82,360,247 to $7,998,081. AR6075. The de-obligated amount consisted, in part, of an "ineligible scope of work and costs associated with the permanent construction," consisting of what FEMA found were improvements to Holy Cross's campus, rather than approved replacements of the structures destroyed in Hurricane Katrina. AR6076. Accordingly, FEMA recalculated eligible architectural and engineering (A&E) fees based on the scope of eligible work. *Id.* This resulted in a $1,063,234.25 de-obligation for A&E expenses. *Id.* FEMA performed similar analyses and de-obligation calculations for the project manager (PM) and construction manager (CM) fees, resulting in de-obligations of $804,373.17 and $899,250.00, respectively. AR6076–78. FEMA acknowledged that "Holy Cross may supply additional documentation during final inspection and closeout for FEMA to reconsider the submitted costs." AR6078.

Holy Cross endeavored to do just that in its first appeal of FEMA's de-obligation determination. AR601–19. FEMA considered Holy Cross's arguments and issued two requests for supplemental information, requesting additional documentation from Holy Cross "to support [its] claim [that] the submitted costs associated with the replacement of the facilities at appeal were reasonable and necessary to restore the predisaster design, capacity, and function of the damaged facilities." AR3418. FEMA granted Holy Cross's first appeal in part, finding that Holy Cross demonstrated that it incurred an additional $3,158,985.10 in reasonable costs. AR2117. But after reviewing Holy Cross's arguments and responses to its two requests for supplemental information, FEMA concluded that Holy Cross's modifications had resulted in changes that enhanced and/or expanded equipment and systems, and reconfigured the physical layout of exterior and interior spaces within the Facilities beyond what existed before the disaster, and beyond the FEMA approved scope of work for restoration. Thus, FEMA denied-in-part Holy

Cross's first appeal of the remaining de-obligated amount, consisting of $5,231,223.43. AR2117, 2129, 6076.

Holy Cross took a second appeal from FEMA's denial-in-part. AR2887–2991. Holy Cross reiterated many of the same arguments from its first appeal, but also asserted, for the first time, that 42 U.S.C. § 5205(c) of the Stafford Act prevented FEMA from de-obligating funds. AR2990. § 5205(c) provides that "State or local government shall not be liable for reimbursement. . . made under the [Stafford A]ct if" (1) "the payment was authorized by an approved agreement specifying the cost;" (2) "the costs were reasonable; and" (3) "the purpose of the grant was accomplished."

FEMA denied Holy Cross's second appeal, sustaining the findings of its resolution of Holy Cross's first appeal. AR3406–12. FEMA also found that § 5205(c) was inapplicable to Holy Cross, as the school is a private nonprofit, and not a state or local government. AR3412. As a result, Holy Cross filed the instant case under the APA, arguing that FEMA's final de-obligation determination was arbitrary, capricious, an abuse of discretion, or contrary to law. Rec. Doc. 1 at 20. Holy Cross timely moved for summary judgment, Rec. Doc. 48, and FEMA filed in response a combined opposition memorandum and Cross-motion for Summary Judgment under FED. R. CIV. P. 56(a), R. Doc. 54. Holy Cross filed a memorandum in opposition to FEMA's Cross-motion for Summary Judgment, R. Doc. 61, and FEMA filed a reply brief, R Doc. 61.

## II.   PRESENT MOTIONS

In its Motion for Summary Judgment, Holy Cross argues that 42 U.S.C. § 5205(c) does indeed apply to Holy Cross, notwithstanding the plain language of the statute limiting that provision to state and local governments, and that as a result FEMA is barred from de-obligating

funds received by Holy Cross because it has fulfilled all three of the statute's requirements. R. Doc. 48-1 at 12–18. In the alternative, it argues that FEMA is barred from de-obligating those funds because Holy Cross is a mere subgrantee, and the grantee itself, GOHSEP, is undeniably a state government agency. *Id.* at 18–21. Should the Court agree with FEMA that § 5205(c) is inapplicable, Holy Cross argues that FEMA's de-obligation of funds in this instance is an abuse of its discretion as arbitrary and capricious and not in accordance with the law. *Id.* at 21–28. Finally, should the Court reject its other arguments, Holy Cross argues that FEMA should be permitted to de-obligate no more than $441,212.42 from the funds it received for reconstruction of the CSB, rather than FEMA's "irrational calculation" of $3,202,166.71. *Id.* at 31.

In response, in its Cross-motion for Summary Judgment, FEMA argues that 42 U.S.C. § 5205(c) does not apply to Holy Cross as it is not a state or local government agency and that § 5205(c) does not prevent it from de-obligating funds from Holy Cross as the subgrantee just because the grantee, GOHSEP, is a state government agency. R. Doc. 54-3 at 7–14. It argues that even if the Court were to find that § 5205(c) does cover Holy Cross, Holy Cross has not met the three criteria requited by that statute. *Id.* at 14–15. Finally, FEMA argues that its de-obligation does not violate the APA. *Id.* at 16–21.

### III.   LEGAL STANDARD

#### A.  Summary Judgment

Under Rule 56, a court normally considers whether the record, viewed in the light most favorable to the non-moving party, evinces a genuine dispute of material fact. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Hill v. London, Stetelman, & Kirkwood, Inc.*, 906 F.2d 204, 207 (5th Cir. 1990). "This formula adjusts, however, when it arises in the context of judicial review of an administrative agency's decision." *Town of Abita*

*Springs v. U.S. Army Corps of Eng'rs*, 153 F. Supp. 3d 894, 903 (E.D. La. 2015) (citation omitted). In such cases, the "motion for summary judgment stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review." *Id.* Accordingly, the movant's burden is similar to its ultimate burden on the merits: the plaintiff must prove by a preponderance of evidence that the facts in dispute more likely than not indicate an abuse of discretion. *Id.*; R. Doc. 61 at 10.

### B. Administrative Procedure Act

Under the APA, the Court must uphold the agency's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Marsh v. Oregon Natural Res. Council*, 490 U.S. 360 (1989); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971). "[T]he ultimate standard of review is a narrow one. The Court is not empowered to substitute its own judgment for that of the agency." *Overton Park*, 401 U.S. at 416; *see also FCC v. Nat'l Citizens Comm. for Broadcasting*, 436 U.S. 775, 813–14 (1978); *Baltimore Gas & Elec. v. NRDC*, 462 U.S. 87, 103 (1983). "The court's role is not to weigh the evidence pro and con but to determine 'whether the agency decision was based on a consideration of the relevant factors and whether there was a clear error of judgment.'" *State of La. ex rel Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "[I]f the agency considers the factors and articulates a rational relationship between the facts found and the choice made, its decision is not arbitrary or capricious." *Id.* at 327. The agency's decision need not be ideal, and "will not be deemed arbitrary, capricious, or an abuse of discretion simply because one may happen to think it ill-considered or to represent a less appealing alternative." *Id.* at 327 n.9 (quoting *Hondros v. U.S. Civil Serv. Comm'n*, 720 F.2d 278, 295 (3d Cir. 1983)).

Rather, "[i]f the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Texas Oil & Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 934 (5th Cir. 1998). Indeed, the agency action under review is "entitled to a presumption of regularity." *Overton Park*, 401 U.S. at 415. Finally, the party bringing an APA action bears the burden of demonstrating that an agency's actions were in violation of the act. *See Dir., OWCP v. Greenwich Collieries*, 512 U.S. 267, 281 (1994).

## IV. DISCUSSION

### A. 42 U.S.C. § 5205(c)

"The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). "When the language is plain, we must enforce the statute's plain meaning, unless absurd." *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 792 (5th Cir. 2021). By its plain text, 42 U.S.C. § 5205(c) provides, *inter alia*, that a "[s]tate or local government" shall not be liable for reimbursement of any payment made under the Stafford Act where certain conditions are met. (Emphasis added).

It is uncontested that Holy Cross is not a state or local government, or an agency thereof. Nonetheless, Holy Cross argues that the legislative intent behind § 5205(c) indicates that it was intended to apply beyond the enumerated "state and local government[s]" to other types of subgrantees like Holy Cross. However, as stated, where the statutory text is clear and unambiguous, the Court's inquiry must end, unless the plain meaning of the text leads to an absurd result.

Holy Cross argues that a plain-meaning interpretation of § 5205(c) leads to an absurd result because, it argues, "a private non-profit should be able to rely on the grant in the same

manner as a governmental agency[;]" that is, a non-profit should also be assured under § 5205(c) that as long as the payment was authorized, the costs were reasonable, and the purpose of the grant was accomplished, FEMA cannot later de-obligate funds granted to it. R. Doc. 41-1 at 14–18. But this is a policy statement, not an absurd result. Even if the Court should agree with Holy Cross that a non-profit *should* have that same assurance, it cannot question Congress's decision, as evidenced by the plain language of the statute, to exclude private non-profits like Holy Cross from the protection of § 5205(c).

Holy Cross's argument that it is nonetheless protected by § 5205(c) because the grantee, GOHSEP, is a state government agency, similarly fails. As FEMA points out, this argument, taken to its logical conclusion, would mean that § 5205(c) applies to *every* subgrantee applicant, since all public-assistance funding under the Stafford Act first flows through a state government grantee. R. Doc. 54-3 at 13–14. But *expressio unius est exclusio alterius. See, e.g.*, *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017); *Texas v. United States*, 809 F.3d 134, 182 n.180 (5th Cir. 2015). Congress explicitly identified both "[s]tate and local government[s]" and "private nonprofit[s]" as potential beneficiaries of public-assistance funds earlier in the Stafford Act, 42 U.S.C. §§ 5172(a)(1)(A)–(B), yet limited the protection of § 5205(c) to just "[s]tate or local government[s]." 42 U.S.C. § 5205(c); *see also Rodriguez-Avalos v. Holder*, 788 F.3d 444, 451 (5th Cir. 2015) (Courts "generally presume that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994) (cleaned up).

Accordingly, the Court holds that 42 U.S.C. § 5205(c) does not bar FEMA from de-obligating funds received by Holy Cross under the Stafford Act.

### B. Administrative Procedure Act

Having rejected Holy Cross's arguments that 42 U.S.C. § 5205(c) bars FEMA from de-obligating the funds it received under the Stafford Act, the Court must next address its arguments that FEMA's de-obligation of those funds was arbitrary and capricious in violation of the APA. As stated *supra*, "[t]he court's role is not to weigh the evidence pro and con but to determine 'whether the agency decision was based on a consideration of the relevant factors and whether there was a clear error of judgment.'" *Ex rel Gustev. Verity*, 853 F.2d at 327. "[I]f the agency considers the factors and articulates a rational relationship between the facts found and the choice made, its decision is not arbitrary or capricious." *Id.* Here, the administrative record shows that FEMA "performed a detailed analysis to determine if [Holy Cross's] claimed costs were reasonable and allowable" and initially intended to de-obligate just $7.9 million – less than 10% of the amount identified in the DHS-OIG report. AR6074–78. Of that amount, FEMA invited Holy Cross to "supply adequate supporting documentation" that might allow FEMA to "reinstate costs accordingly." AR6078. FEMA carefully reviewed the materials in Holy Cross's first appeal, twice requested supplemental information to assist its review, participated in a facilitated discussion with Holy Cross about the disputed amounts, then further reduced the de-obligated amount to less than 6% of the amount identified in the DHS-OIG report. AR2124-29. FEMA has thus considered the relevant factors and articulated a rational relationship between the facts found and the decision made.

In arguing that this decision was arbitrary and capricious, Holy Cross claims that FEMA has ignored that the expansion of Holy Cross's campus beyond the replacement authorized under the Stafford Act was done at Holy Cross's own cost. R. Doc. 48-1 at 22–23. However, the precise purpose of FEMA's audit was to ensure that federal grant funds were not used for

campus improvements, expansions, enhancements, or other ineligible costs beyond the FEMA-approved scope of work. AR2126. The audit determined that a certain amount of the grant funds was used inappropriately for improvement of Holy Cross's campus. Holy Cross does not account for the exhaustion of those funds in any FEMA-approved manner. Accordingly, the fact that Holy Cross may have also spent private funds expanding or improving its campus beyond the FEMA-approved scope of replacement work is immaterial.

Holy Cross also argues that FEMA's de-obligation of funds was arbitrary and capricious because GOHSEP determined that Holy Cross's expenditures were reasonable. R. Doc. 61 at 6. But GOHSEP's finding is not binding on FEMA. Additionally, the fact that the costs *in toto* may have been reasonable, assuming that they were, does not prevent FEMA from disallowing costs incurred from ineligible improvements. The reasonableness of the costs of ineligible improvements does not convert those ineligible improvements into eligible replacements.

Holy Cross argues that FEMA's evaluation of its costs ignores the exigent circumstances of the post-Katrina landscape, pointing out that "[w]hen there are exigent circumstances and a declaration of emergency, FEMA regularly relaxes procurement contracts." R. Doc. 48-1 at 24. It is true that FEMA has laid out guidelines for certain exigency exceptions to the requirements grantees must meet in *procuring contracts* for the completion of work approved by FEMA. *See* FEMA, *FM-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*: *Procurement Disaster Assistant Team Field Manual* (2021); FEMA, *Fact Sheet: Procurement Under Grants Under Exigent or Emergency Circumstances* (2020). For example, FEMA requires that "[a]ll procurement transactions for the acquisition of property or services required under a Federal award must be conducted in a manner providing full and open competition[.]" 2 C.F.R. § 200.319. However, under exigent or emergency circumstances,

grantees may be permitted to bypass the competitive solicitation requirement and issue noncompetitive procurement contracts. *See* FEMA, *FM-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*.

This being the case, if FEMA were seeking to de-obligate funds from Holy Cross based on mis-procurement of contracts, Holy Cross might have a viable argument that FEMA choosing not to relax procurement standards under the circumstances of Hurricane Katrina is arbitrary and capricious agency action. But, as explained *supra*, although the OIG's initial audit concluded that "Holy Cross did not follow Federal procurement standards in awarding 21 contracts totaling $82.4 million[,]" AR4117, thereafter FEMA performed its own audit which substantially reduced the amount it found to be disallowed. As FEMA explained, this reduced amount it sought to de-obligate was for "ineligible scope of work and costs associated with the permanent construction," consisting of what FEMA found were improvements to Holy Cross's campus, rather than approved replacements of the structures destroyed in Hurricane Katrina. AR6076. Accordingly, the amount that FEMA now seeks to de-obligate is not based on any violation of contract procurement requirements, but because Holy Cross expended funds it was granted on unapproved improvements to the campus. There is no evidence that FEMA has a policy of "regularly relaxing" its requirement that the kind of grant received by Holy Cross in this case must be used for like replacement only, and not improvement. Accordingly, it is not arbitrary and capricious for FEMA to decline to relax that standard here.

Finally, Holy Cross takes issue with the methodology, a computer program called RS Means, that FEMA used to calculate the reasonable cost of the replacements Holy Cross was permitted to make using its federal grant. It suggests that FEMA should have used a "proportionality" model comparing the costs incurred by Holy Cross with those of other campuses also damaged in Hurricane Katrina. In particular, Holy Cross objects that FEMA used

RS Means to determine that the cost of the project for the Central Services Building should have been only $909,340.27, rather than Holy Cross's claimed reasonable actual cost of $4,111,507.00. But it is well settled under the APA that when the agency choses between various alternative methodologies—like RS Means or Holy Cross's "proportionality" model—"[i]t is not for [the Court] to ask whether [the] decision was 'the best one possible' or even whether it was 'better than the alternatives.'" *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2571 (2019) (quoting *FERC v. Elec. Power Supply Assn.*, 577 U. S. 260, 292 (2016)). Rather, FEMA need only "examine the relevant considerations and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Elec. Power Supply Assn.*, 577 U. S. at 292. The administrative record shows that FEMA has met that standard here. AR6075–76, 6080, 6104–06, & 2117–30.

Accordingly, the Court finds that FEMA's de-obligation of funds in this matter was not arbitrary and capricious in violation of the APA.

V. **CONCLUSION**

Having made the foregoing determinations, no genuine issues of material fact remain as to whether FEMA may de-obligate the $4,829,095.90 it seeks from the grant received by Holy Cross under the Stafford Act for the replacement of its campus facilities which were destroyed or damaged by Hurricane Katrina. Accordingly, for the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**. Defendant's Cross-motion for Summary Judgment is **GRANTED**.

While the Court can find no legal reason to deny FEMA's Cross-motion for Summary Judgment, it does recognize that Hurricane Katrina was a disaster for New Orleans of a magnitude unlikely to be paralleled, and the importance of Holy Cross's continued

administration to the New Orleans community. Accordingly, the Court expresses its hope that the parties may reconsider their positions so that they may be able to resolve this matter morally and equitably. Perhaps some of the "improvements" questioned by FEMA were necessitated by modern building code requirements or more efficient structural designs or materials, and when considered in that light were not improvements but simply replacements in a new format.

New Orleans, Louisiana, this 3rd day of January, 2023.

_____
UNITED STATES DISTRICT JUDGE