```
UNITED STATES DISTRICT COURT        *
EASTERN DISTRICT OF LOUISIANA       *
                                    *
                                    *
HOLY CROSS SCHOOL                   *
                                    *
        Plaintiff                   *   CASE NO. 2:21-CV-01658
                                    *   DIVISION:L(1)
                                    *
FEDERAL EMERGENCY                   *
MANAGEMENT AGENCY (FEMA) and        *
DEANNE CRISWELL, IN HER CAPACITY AS *
ADMINISTRATOR OF FEMA               *
                                    *
*************************************
```

## ORDER AND REASONS

Before the Court is Plaintiff Holy Cross College, Inc.'s ("Holy Cross") Motion for Reconsideration, R. Doc. 68, of the Court's Order granting summary judgment to Defendants Federal Emergency Management Agency and Deanne Criswell, in Her Capacity as Administrator of FEMA's (collectively "FEMA"). Having reviewed the parties' arguments and the applicable law, the Court rules as follows.

I. **BACKGROUND**

Holy Cross is a private, nonprofit, college-prep middle and high school for boys. AR4118.1. Hurricane Katrina destroyed its former campus in the Ninth Ward of New Orleans in August 2005. *Id.* Because of this extensive storm damage, Holy Cross was eligible for public-assistance grant funding from FEMA under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121–5207 (the "Stafford Act"). AR2119. Under the Stafford Act, the State or a state agency acts as the "grantee" for public-assistance grant funding. 44 C.F.R. § 206.201(m). Eligible subgrantees, which include state/local government and

agencies, Indian tribal governments, and private nonprofit organizations, then apply for assistance from FEMA under the grantee's grant. 44 C.F.R. §§ 206.201(a); (o). In this case, the State of Louisiana Governor's Office of Homeland Security and Emergency Preparedness (GOHSEP) was the grantee after Hurricane Katrina. AR4118.

FEMA determined that all four of Holy Cross's buildings were eligible for replacement. *Id.* Holy Cross relocated from the Ninth Ward to the Gentilly neighborhood of New Orleans and began campus construction there in 2008. AR4119. Holy Cross completed four permanent buildings – the middle-school and high-school buildings in August 2009, an administration building in March 2010, and the central services building (CSB)/student activity center (SAC) in February 2011. *Id.* Although the facilities are connected in a single facility, the SAC was a capped, improved project under Stafford Act regulations and policy, whereas the CSB was an uncapped, at-cost replacement project. AR1049, 2903, 2884-85, 2954, 6075.

In 2015, the Department of Homeland Security (DHS) Office of Inspector General (OIG), completed an audit of Holy Cross's receipt of $89.3 million in grant funding from FEMA under the Stafford Act. AR4116–41. The audit concluded that "Holy Cross did not follow Federal procurement standards in awarding 21 contracts totaling $82.4 million." AR4117. The OIG recommended that FEMA "disallow $82,360,247 as ineligible contract costs, unless FEMA grants an exemption for all or part of the costs as provided for in 2 C.F.R. Part 215.4."[1] AR4130. In accordance with that regulation and in response to the OIG audit findings, FEMA "performed a detailed analysis to determine if the claimed costs were reasonable and allowable for the level of effort required to perform the eligible work." AR6074. FEMA's audit found the disallowed

---

[1] Now 2 C.F.R. § 200.339.

amount reduced from the OIG's $82,360,247 to $7,998,081. AR6075. The de-obligated amount consisted, in part, of an "ineligible scope of work and costs associated with the permanent construction," consisting of what FEMA found were improvements to Holy Cross's campus, rather than approved replacements of the structures destroyed in Hurricane Katrina. AR6076. Accordingly, FEMA recalculated eligible architectural and engineering (A&E) fees based on the scope of eligible work. *Id.* This resulted in a $1,063,234.25 de-obligation for A&E expenses. *Id.* FEMA performed similar analyses and de-obligation calculations for the project manager (PM) and construction manager (CM) fees, resulting in de-obligations of $804,373.17 and $899,250.00, respectively. AR6076–78. FEMA acknowledged that "Holy Cross may supply additional documentation during final inspection and closeout for FEMA to reconsider the submitted costs." AR6078.

Holy Cross endeavored to do just that in its first appeal of FEMA's de-obligation determination. AR601–19. FEMA considered Holy Cross's arguments and issued two requests for supplemental information, requesting additional documentation from Holy Cross "to support [its] claim [that] the submitted costs associated with the replacement of the facilities at appeal were reasonable and necessary to restore the predisaster design, capacity, and function of the damaged facilities." AR3418. FEMA granted Holy Cross's first appeal in part, finding that Holy Cross demonstrated that it incurred an additional $3,158,985.10 in reasonable costs. AR2117. But after reviewing Holy Cross's arguments and responses to its two requests for supplemental information, FEMA concluded that Holy Cross's modifications had resulted in changes that enhanced and/or expanded equipment and systems, and reconfigured the physical layout of exterior and interior spaces within the Facilities beyond what existed before the disaster, and beyond the FEMA approved scope of work for restoration. Thus, FEMA denied-in-part Holy

Cross's first appeal of the remaining de-obligated amount, consisting of $5,231,223.43. AR2117, 2129, 6076.

Holy Cross took a second appeal from FEMA's denial-in-part. AR2887–2991. Holy Cross reiterated many of the same arguments from its first appeal, but also asserted, for the first time, that 42 U.S.C. § 5205(c) of the Stafford Act prevented FEMA from de-obligating funds. AR2990. § 5205(c) provides that "State or local government shall not be liable for reimbursement. . . made under the [Stafford A]ct if" (1) "the payment was authorized by an approved agreement specifying the cost;" (2) "the costs were reasonable; and" (3) "the purpose of the grant was accomplished."

FEMA denied Holy Cross's second appeal, sustaining the findings of its resolution of Holy Cross's first appeal. AR3406–12. FEMA also found that § 5205(c) was inapplicable to Holy Cross, as the school is a private nonprofit, and not a state or local government. AR3412. As a result, Holy Cross filed the instant case under the APA, arguing that FEMA's final de-obligation determination was arbitrary, capricious, an abuse of discretion, or contrary to law. Rec. Doc. 1 at 20. Holy Cross timely moved for summary judgment, Rec. Doc. 48, and FEMA filed in response a combined opposition memorandum and Cross-motion for Summary Judgment under FED. R. CIV. P. 56(a), R. Doc. 54. Holy Cross filed a memorandum in opposition to FEMA's Cross-motion for Summary Judgment, R. Doc. 61, and FEMA filed a reply brief, R Doc. 61.

On December 21, 2022, the Court heard oral argument from the parties on their dueling motions for summary judgment. R. Doc. 64. Ultimately, the Court granted FEMA's motion for summary judgment, denying Holy Cross's motion. R. Doc. 65. In so granting, the Court held that 42 U.S.C. § 5205(c) did not bar FEMA from de-obligating funds received by

Holy Cross under the Stafford Act and that FEMA's actions in seeking to de-obligate the funds at issue were not arbitrary and capricious.

## II. DISCUSSION

Holy Cross now moves the Court to reconsider its ruling pursuant to Federal Rule of Civil Procedure 60. R. Doc 68. Rule 60 provides an avenue for a party to move for relief from a judgment or order for a number of reasons. Rule 60(a) allows for corrections based on clerical mistakes, oversights, or omissions. Rule 60(b) allows for relief from a final judgment or order based on:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Holy Cross does not identify under which provision of Rule 60 it moves. It simply points the Court to Exhibit G of Holy Cross's complaint, which consists of an excel spreadsheet laying out the costs it expended during the construction of Holy Cross's new campus. R. Doc. 68-2. Although this document was available to the Court when it granted FEMA's motion for summary judgment, Holy Cross notes that this Court used lack of information concerning the delineation of costs and how certain funds were used by Holy Cross in granting FEMA's motion for summary judgment. The thrust of this argument seems to be that this Court overlooked

Exhibit G in making its ruling in this case, and that further consideration of the document will convince the Court to reverse its grant of summary judgment to FEMA.

The Court disagrees. Exhibit G was before it previously, and was considered. While the Court did mention at oral argument that it lacked information concerning the breakdown of Holy Cross's costs, this was not the basis of its ruling and thus does not implicate reconsideration. Additionally, Exhibit G arguably raises more questions than it answers. For instance, the "New Campus Cost Analysis," Rec. Doc. 68-2 at 2, shows a $99,566,329.66 cost for "Buildings and Improvements" at the new campus on Paris Ave. in Gentilly, but provides no further breakdown between the five campus buildings, the sources of the funding, or the specific expenses for improvements versus replacements. Similarly, page 3 reflects the receipt of $79,287,870 from FEMA, but doesn't specify where that money was spent. *Id.* at 3. On page 5, the amounts listed as expended on the Central Services Building (CSB) and the Student Center differ from what Holy Cross submitted on pay applications to FEMA at project closeout. *See* AR 510–11, 2121, 2128–29, 5735–36, 5679. Finally, page 12 reflects that the CSB cost $2,398,165.53, though FEMA had paid $8,009,865.35. Rec. Doc. 68-2 at 12. Because these figures do not accurately reflect what Holy Cross claimed, how much FEMA paid, or what FEMA de-obligated from the project, the Court sees no basis in Exhibit G to reconsider its grant of summary judgment to FEMA.

### III. CONCLUSION

For the foregoing reasons, Holy Cross's Motion for Reconsideration is hereby **DENIED**.

New Orleans, Louisiana, this 6th day of February, 2023.

_____
UNITED STATES DISTRICT JUDGE